PUBLIC COPY – SEALED MATERIAL DELETED

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **REH COMPANY, LLC,** | ) | |
| | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-1311** |
| | ) | |
| **UNITED STATES ENVIRONMENTAL** | ) | |
| **PROTECTION AGENCY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PETITION FOR REVIEW

Pursuant to Section 307(b)(1) of the Clean Air Act, 42 U.S.C. §7607(b)(1); Rule 15(a) of the Federal Rules of Appellate Procedure; and D.C. Circuit Rule 15(a), REH Company, LLC petitions this Court for review of an August 9, 2019 decision of the U.S. Environmental Protection Agency ("EPA") to deny Sinclair Wyoming Refining Company LLC's ("SWRC") 2018 petition for a small refinery exemption (the "2019 Denial"). A copy of the 2019 Denial is attached here as Exhibit A.

Although the 2019 Denial was issued more than five years ago, this Court has jurisdiction, under 42 U.S.C. §7607(b)(1), to hear a petition for review based on grounds arising after the initial time for review has expired, so long as the petition for review is filed "within sixty days after such grounds arise." Such grounds exist

here. On July 26, 2024, this Court issued an opinion in *Sinclair Wyoming Refining Co. LLC v. EPA*, No. 22-1073, 2024 WL 3801747 (D.C. Cir. July 26, 2024) ("*Sinclair*").

In that decision, the Court vacated EPA's April 2022 decision regarding SWRC's exemption petition. This left in place EPA's 2019 Denial, which must now be revisited based on *Sinclair*.

As required by the Court's precedent, *see Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654, 666 (D.C. Cir. 1975), REH Company, LLC has filed a petition with EPA presenting the Administrator with the reasons why the 2019 Decision must be reconsidered. *See* Exhibit B, attached. That petition is currently pending before the agency.

This Court has jurisdiction, and venue is proper under 42 U.S.C. §7607(b)(1).

Date: September 24, 2024

Respectfully submitted,

 /s/ Jeffrey R. Holmstead
Jeffrey R. Holmstead
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street N.W., Suite 900
Washington, D.C. 20036
(202) 828-5800 (telephone)
(202) 857-4812 (facsimile)
Jeff.Holmstead@bracewell.com
Brittany.Pemberton@bracewell.com

***Counsel for Petitioner***

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| **REH COMPANY, LLC,** ) | |
| ) | |
| ) | |
| **Petitioner** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **UNITED STATES ENVIRONMENTAL** ) | |
| **PROTECTION AGENCY,** ) | |
| ) | |
| **Respondent.** ) | |

## RULE 26.1 STATEMENT

REH Company, LLC (formerly known as The Sinclair Companies) ("REH") submits this corporate disclosure statement pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1. REH certifies that it is a wholly-owned subsidiary of REH Advisors Inc, a privately held corporation with no parent corporation. During the year at issue in the challenged agency action and for which relief is sought, REH owned the Sinclair Wyoming Refinery and Sinclair Wyoming Refining Company LLC.

Date:   September 24, 2024          Respectfully submitted,

  */s/ Jeffrey R. Holmstead*

Jeffrey R. Holmstead
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street N.W., Suite 900
Washington, D.C. 20036
(202) 828-5800 (telephone)
(202) 857-4812 (facsimile`)
Jeff.Holmstead@bracewell.com
Brittany.Pemberton@bracewell.com

**Counsel for Petitioner**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rules of Appellate Procedure 3(d), 15I, and 25, D.C. Circuit Rules 15(a) and 25, and 40 C.F.R. § 23.12(a), I hereby certify that the foregoing Petition for Review and Rule 26.1 Statement have been served by United States certified mail, return receipt requested, this 24th day of September, 2024, upon each of the following:

Hon. Michael S. Regan, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

U.S. Environmental Protection Agency
Correspondence Control Unit
Office of General Counsel (2311)
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Hon. Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Hon. Todd Kim
Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

*/s/ Jeffrey R. Holmstead*
Jeffrey R. Holmstead

# EXHIBIT A

The purpose of this email is to notify you that EPA has evaluated your petition for a one-year extension for 2018 of the small refinery exemption from the requirements of the renewable fuel standard (RFS) program for the Sinclair Wyoming refinery. Based on the information submitted in your petition, EPA's consultation with the Department of Energy (DOE), and the recommendation DOE provided, EPA Acting Assistant Administrator for Air and Radiation Anne Idsal has decided to deny your request for exemption for 2018.  This means that from January 1, 2018, through December 31, 2018, your refinery's gasoline and diesel production remain subject to the percentage standards of 40 CFR 80.1405, and remains subject to the requirements of an obligated party for fuel produced at the refinery during that period.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Byron Bunker
Director Compliance Division
Office of Transportation and Air Quality
Environmental Protection Agency
2000 Traverwood Drive
Ann Arbor, MI 48105
Bunker.Byron@epa.gov
Phone: (734) 214-4155
Mobile: (734) 353-9623
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

## MEMORANDUM

SUBJECT:   Decision on 2018 Small Refinery Exemption Petitions

FROM:        Anne Idsal, Acting Assistant Administrator
                    Office of Air and Radiation

TO:             Sarah Dunham, Director
                    Office of Transportation and Air Quality

Section 211(*o*)(9)(B) of the Clean Air Act (CAA or the Act) authorizes the Administrator to temporarily exempt small refineries from their renewable fuel volume obligations under the RFS program "for the reason of disproportionate economic hardship" (DEH). The Act instructs EPA, in consultation with the Department of Energy (DOE), to consider the DOE Small Refinery Study[1] and "other economic factors" in evaluating small refinery exemption (SRE) petitions. The statute does not define "disproportionate economic hardship," leaving for EPA's discretion how it implements this exemption provision.[2]

As part of EPA's process for evaluating SRE petitions, EPA asks DOE to evaluate all the information EPA receives from each petitioner. DOE's expertise in evaluating economic conditions at U.S. refineries is fundamental to the process both DOE and EPA use to identify whether DEH exists for petitioning small refineries in the context of the RFS program. After evaluating the information submitted by the petitioner, DOE provides a recommendation to EPA on whether a small refinery merits an exemption from its RFS obligations. As described in the DOE Small Refinery Study, DOE assesses the potential for DEH at a small refinery based on two sets of metrics. One set of metrics assesses structural and economic conditions that could disproportionately impact the refinery (collectively described as "disproportionate impacts" when referencing Section 1 and Section 2 of DOE's scoring matrix). The other set of metrics assesses the financial conditions that could cause viability concerns at the refinery (described as "viability impairment" when referencing Section 3 of DOE's scoring matrix). DOE's recommendation informs EPA's decision about whether to grant or deny an SRE petition for a small refinery.

Previously, DOE and EPA considered that DEH exists only when a small refinery experiences *both* disproportionate impacts *and* viability impairment. In response to concerns that the two agencies' threshold for establishing DEH was too stringent, Congress clarified to DOE that DEH can exist if DOE finds that a small refinery is experiencing *either* disproportionate impacts *or* viability impairment. If so, Congress directed DOE to recommend a 50 percent exemption from the RFS. This was relayed in language included in an explanatory statement accompanying the

---

[1] "Small Refinery Exemption Study, An Investigation into Disproportionate Economic Hardship," Office of Policy and International Affairs, U.S. Department of Energy, March 2011 (DOE Small Refinery Study).
[2] *Hermes v. Consol., LLC v. EPA*, 787 F.3d 568, 575 (D.C. Cir. 2015).

Internet Address (URL) ● http://www.epa.gov
**Recycled/Recyclable** ● Printed with Vegetable Oil Based Inks on 100% Postconsumer, Process Chlorine Free Recycled Paper

2016 Appropriations Act that stated: "If the Secretary finds that either of these two components exists, the Secretary is directed to recommend to the EPA Administrator a 50 percent waiver of RFS requirements for the petitioner."[3] Congress subsequently directed EPA to follow DOE's recommendation, and to report to Congress if it did not.[4]

Based on DOE's recommendations for the 2018 petitions, I am today granting full exemptions for those 2018 small refinery petitions where DOE recommended 100 percent relief because these refineries will face a DEH. I am denying exemptions for those 2018 small refinery petitions where DOE recommended no relief because they will not face a DEH.

I am also granting full exemptions for those 2018 small refinery petitions where DOE recommended 50 percent relief. This decision is appropriate under the Act and is consistent with the case law recognizing EPA's independent authority in deciding whether to grant or deny RFS small refinery petitions.[5] DOE's recommendations recognize an economic impact on these small refineries, and I conclude these small refineries will face a DEH meriting relief. I have concluded that the best interpretation of Section 211(o)(9)(B) is that EPA shall either grant or deny petitions for small refinery hardship relief in full, and not grant partial relief. The exemption available under Section 211(o)(9)(B) is explicitly described as an "extension of the exemption under subparagraph (A)." In turn, subparagraph (A) provides that the requirements of the RFS program "shall not apply to small refineries until calendar year 2011." It is evident that the original exemption under subparagraph (A) was a full exemption, and therefore I conclude that when Congress authorized the Administrator to provide an "extension" of that exemption for the reason of DEH, Congress intended that extension to be a full, and not partial, exemption. This approach is also consistent with congressional direction since enactment of the provision, which states: "The Agency is reminded that, regardless of the Department of Energy's recommendation, additional relief may be granted if the Agency believes it is warranted."[6]

Dated: 8/9/2019

Anne Idsal
Acting Assistant Administrator
Office of Air and Radiation

---

[3] Consolidated Appropriations Act, 2016, Pub. L. No. 114-113 (2015). The Explanatory Statement is available at: https://rules.house.gov/bill/114/hr-2029-sa.
[4] Senate Report 114-281 ("When making decisions about small refinery exemptions under the RFS program, the Agency is directed to follow DOE's recommendations which are to be based on the original 2011 Small Refinery Exemption Study prepared for Congress and the conference report to division D of the Consolidated Appropriations Act of 2016. Should the Administrator disagree with a waiver recommendation from the Secretary of Energy, either to approve or deny, the Agency shall provide a report to the Committee on Appropriations and to the Secretary of Energy that explains the Agency position. Such report shall be provided 10 days prior to issuing a decision on a waiver petition.").
[5] *Sinclair Wyoming Refining Co. v. EPA*, 874 F.3d 1159, 1166 (10th Cir. 2017); *See also Hermes Consol.* 787 F.3d at 574-575; *Lion Oil Co. v. EPA*, 792 F.3d 978, 982-983 (8th Cir. 2015).
[6] Consolidated Appropriations Act, 2019, Pub. L. No. 116-6 (2019), *see* H.Rept. 116-9 at 741 (February 13, 2019).

# EXHIBIT B



September 24, 2024

Chris McKenna
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
MAIL CODE 6405A
Washington, D.C. 20460

**Re:** **Renewable Fuel Standard—Petition for Reconsideration of 2018 Small Refinery Petition for Sinclair Wyoming Refining Company**

Mr. McKenna:

Pursuant to §307 of the Clean Air Act (42 U.S.C. §7607), §553(e) of the Administrative Procedure Act, and Oljato Chapter of the Navajo Tribe v. Train, 515 F.2d 654 (D.C. Cir. 1975), REH Company, LLC submits this petition requesting that the U.S. Environmental Protection Agency ("EPA" or the "Agency") convene a proceeding to reconsider its August 9, 2019 denial of REH's petition for a 2018 small refinery exemption ("SRE") for the Sinclair Wyoming Refining Company LLC ("SWRC"). As explained in this petition, grounds arising within the previous 60 days have arisen that require reconsideration. On July 26, 2024, the D.C. Circuit issued an opinion in *Sinclair Wyoming Refining Co. LLC v. EPA*[1] in which the court vacated EPA's April 2022 decision regarding SWRC's exemption petition. This left in place EPA's 2019 decision denying SWRC's SRE petition, which must now be revisited based on the Sinclair decision.

Under the Clean Air Act ("CAA"), reconsideration is mandatory when it is sought to address circumstances that arise after the close of the public comment period (but before the time for judicial review) that are of central relevance to the outcome of the decision. These elements are met easily here. While there was no formal public comment period on EPA's 2019 decision, the *Sinclair* case was decided long after EPA could account for it in adjudicating SWRC's petition. This reconsideration petition is submitted before the close of the period for judicial review, and because the grounds raised here are of central relevance to the underlying rule, reconsideration is mandatory. REH respectfully requests that EPA move quickly to convene a proceeding for reconsideration and reserves its right to bring an action for unreasonable delay should EPA fail to promptly act on this petition.

---

[1] __ F.4th __, No. 22-1073, 2024 WL 3801747 (July 26, 2024) ("*Sinclair*").

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

## I.     Background

### a.  Sinclair Wyoming Refining Company

The Sinclair Wyoming Refinery (the "Refinery") is a small refinery located in Rawlins, Wyoming, a city near Wyoming's southern border, 150 miles west of Cheyenne. REH Company, LLC (formerly known as The Sinclair Companies) owned the Refinery and SWRC until March 2022, when REH Company, LLC merged Sinclair Oil Corporation with HollyFrontier Corporation, the merged company now known as HF Sinclair Corporation.

The following material describes SWRC's business as it was in 2018, the only circumstances relevant to SWRC's entitlement to relief from 2018 compliance with the requirements of the RFS program.

The Refinery is connected to three crude oil pipelines. It is also connected to five finished product pipelines:

- the Medicine Bow Pipeline, a bidirectional pipeline, which delivers finished product to Rawlins, Wyoming, and also to Denver, Colorado,
- the Pioneer Pipeline, which delivers finished product to Salt Lake City, Utah,
- the Salvation Pipeline, which delivers finished product to Denver, Colorado, by way of Rocky Mountain Pipeline,
- the Seminoe Pipeline, which originates in Billings, Montana, and delivers finished product to Rawlins, Wyoming, and
- the NuStar Energy pipeline, which delivers finished diesel to the Union Pacific Railroad.

SWRC's only line of business was refining and marketing transportation fuels. It had no other lines of business.[2]

---

[2] As SWRC's petition notes, there are slight differences between production numbers and marketing numbers. Not everything that SWRC produced in 2018 was marketed in that calendar year.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

### b. SWRC's 2018 Exemption Petition, RIN Cost Passthrough Study, and Initial Litigation

Congress provided that "[a] small refinery may at any time petition" EPA "for an extension" of its blanket exemption from RFS obligations[3] "for the reason of disproportionate economic hardship." *See* 42 U.S.C. §7545(o)(9)(B)(i). EPA is tasked with "evaluating [such] petition[s]," and in doing so must "consult[ ] with the Secretary of Energy" and "consider the findings" of a 2011 Department of Energy small refinery exemption study,[4] as well as "other economic factors." *Id.* §7545(o)(9)(B)(ii).

███████████████████████████████████████████████████████. On December 22, 2018, SWRC petitioned EPA for a continuation of its exemption for the 2018 compliance year. *See* SWRC 2018 SRE Petition.[5] SWRC's petition provided extensive economic information to demonstrate that it continued to face disproportionate economic hardship under the RFS program. SWRC Petition 4, 10-26. Among other things, SWRC showed that, if it did not receive an exemption for 2018, its RFS compliance cost would █████████████████████████. The company also provided information relevant to DOE's scoring matrix—born out of the Congressionally mandated study it had previously completed—which the department utilizes in evaluating SRE petitions prior to making recommendations to EPA.

Specifically, SWRC reviewed and addressed each metric in DOE's scoring matrix, providing relevant information to EPA and DOE to allow for accurate evaluation. ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███
█

While the administrative record was still open, SWRC provided *additional* information to show that the Refinery does not operate in a niche market. This was so, SWRC explained, because it was connected to multiple product and feedstock pipelines and marketed its fuel into highly competitive markets. Of particular importance, SWRC submitted to EPA a detailed spreadsheet showing (to the barrel) how the Refinery's refined products are distributed to Denver, Colorado, and parts of Idaho through the Sinclair Pipeline, and to Salt Lake City, Utah, through via the Pioneer pipeline.[6]

---

[3] Congress provided a blanket exemption for all small refineries until calendar year 2011. *See* 42 U.S.C. §7545(o)(9)(A)(i). SWRC received this initial exemption, which EPA then extended for 2011-2012 as a result of the DOE Study. *Id.* §7545(o)(9)(A)(ii)(I).

[4] *See* DOE, An Investigation into Disproportionate Economic Hardship (Mar. 2011), available at https://www.epa.gov/sites/default/files/2016-12/documents/small-refinery-exempt-study.pdf ("DOE Study").

[5] We incorporate this petition, along with all supporting material and various supplements to it, into this petition for reconsideration.

[6] In the certified index to the administrative record that EPA filed in the litigation over the Idsal Memo, EPA designated this evidence as SW-20 (an email from SWRC to EPA, dated May 17, 2019—nearly four months before EPA issued the Isdal Memo) and SW-37 (the spreadsheet). We incorporate these record documents into this petition.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

To SWRC's surprise, on August 9, 2019, the company received an email from an EPA staff member informing it that EPA had denied SWRC's 2018 SRE petition. The email contained no explanation for EPA's decision. Several days later, EPA provided SWRC with a two-page memorandum from then-Acting EPA Assistant Administrator for Air and Radiation Anne Idsal that discussed the process that EPA had long used to evaluate exemption petitions (the "Idsal Memo"). This document contained no explanation for denying or granting any of the 2018 SRE petitions, except for a statement that EPA had granted or denied 36 such petitions based solely upon recommendations from DOE. On August 28, 2019—after repeated requests from SWRC—EPA sent SWRC a copy of the DOE scoring matrix and exemption recommendation for the Refinery ("DOE Recommendation"). For the first time in the history of "disproportionate economic hardship" exemptions, EPA did not provide an individual analysis of SWRC's SRE petition.

In September 2019, SWRC sued to challenge EPA's denial. During that litigation, SWRC learned that EPA had failed to send to DOE the information that SWRC submitted to *EPA* that was central to DOE's assessment of the "niche market" metric (which is included within the "disproportionate structural and economic impacts" section of the DOE scoring matrix). This metric is based on an evaluation of whether a refinery "has access to specific geographical markets with limited alternative finished product supply or access to distressed crude oil supply, thus creating potential for higher than industry refining margins for the niche refiner." DOE Recommendation at 4. According to DOE, "[l]andlocked refiners with direct access to single pipeline are scored a five, and refiners with access to more than one pipeline are scored a ten," *id.*; DOE 2011 Small Refinery Exemption Study at 35.

The materials that EPA failed to send to DOE showed that SWRC is connected to multiple pipelines and that ██████████████████████████████████████████████████████████████ ██████████████████████████ [7] The certified index to the administrative record revealed that EPA never sent this information to DOE. As a result, DOE inaccurately found that "[o]ne other supplier's pipeline provides product to Rawlins, WY," and gave SWRC a score of 5, when SWRC was entitled to a score of ten. DOE Recommendation at 4.[8]

In December 2020, SWRC filed an opening brief. But before the case could be fully briefed, intervening court opinions caused EPA to ask the appeals court for voluntary remand of all the SRE petitions covered by the Idsal Memo. EPA told the D.C. Circuit that remand was necessary to reconsider all 36 exemption decisions for 2018 included in the Idsal Memo (including SWRC's) due to the Tenth Circuit's opinion in *Renewable Fuels Association v. EPA*, 948 F.3d 1206 (10th Cir. 2010)

---

[7] *See* note 5.

[8]  DOE Recommendation at 4. *See* SWRC's 2018 SRE Petition at 27. *Id.* DOE Recommendation at 4.

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE**

("*RFA*") and the Supreme Court's opinion *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Association*, 141 S. Ct. 2172 (2021). EPA, Motion for Voluntary Remand, No. 19-1196 (D.C. Cir. Filed Aug. 25, 2021), ECF No. 1911606. The D.C. Circuit granted EPA's motion on December 8, 2021.

In seeking the remand, EPA made it clear that it was going reevaluate all 36 of its prior decisions in light of its RIN cost-passthrough theory. In response, SWRC retained Charles River Associates (CRA) to evaluate the extent to which SWRC was able to pass through its RFS compliance costs. After analyzing years of detailed, company-specific data, ███████████████████████████████████████████████████████████████████████[9] a percentage far smaller than the industry-wide passthrough-percentage estimated by studies commissioned by EPA several years prior.[10] SWRC submitted this study as part of a supplement to its 2018 SRE petition.[11]

### c. EPA's April 2022 Denial

In April 2022, EPA issued a new decision denying SWRC's and all other 2018 SRE exemption petitions.[12] "'[P]rimarily informed by the *RFA* opinion,'" EPA reinterpreted the SRE statutory language in 42 U.S.C. §7545(o)(9) "to require refineries to demonstrate that they experienced disproportionate economic hardship caused solely by compliance with the RFS program." *Sinclair* at *5 (quoting April Denial at 17) (J.A. 2961).

EPA also applied a "RIN cost passthrough theory to conclude that RFS compliance would not impose any economic hardship on any refinery." *Sinclair* at *5. Relying on dated studies of passthrough in a handful of wholesale markets at the industry level,[13] "EPA found that RIN markets are efficient and liquid, and that the price of fuel on any given day accounts for that day's RIN prices." *Id.* Depending heavily on a faulty assumption that "refineries can purchase RINs ratably—that is, contemporaneously with the sale of their fuel," EPA concluded that small refineries "pass through the RIN costs to consumers in the price of the fuel," and therefore "'no small refinery experiences [disproportionate economic hardship] as a result of compliance with the RFS program.'" *Id.* (quoting April Denial at 18).

SWRC and numerous other refining companies filed suits to challenge the April Denial. On July 26, 2024, the D.C. Circuit vacated the April Denial. In the process, the court rejected EPA's overly narrow

---

[9] Charles River Associates, *Pass-Through of RIN Costs: Sinclair Wyoming Refinery and Sinclair Casper Refinery* at 14 (Aug. 2021) ("CRA Report").
[10] *See, e.g.,* CRA Report at 3 ("The KMS July 2016 study found a high level of pass-through in most price spreads, particularly when pooling results across fuels. The KMS November 2016 study found less pass-through and showed clear signs of regional and fuel-type variations in pass-through estimates.").
[11] See Letter from A Suess, Sinclair Oil, to EPA re: Renewable Fuel Standard—Supplement to 2018 Small Refinery Petition: Sinclair Wyoming Refining Company (Aug. 17, 2021).
[12] EPA, Denial of Petitions for RFS Small Refinery Exemptions, EP-420-R-22-005 (Apr. 2022), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1014EG4.pdf ("April Denial").
[13] CRA Report at 1-4.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

interpretation of the SRE statute and EPA's view that small refineries may *never* experience disproportionate economic hardship under the Agency's RIN cost passthrough theory.

## II.     EPA Must Reconsider SWRC's 2018 Exemption Petition.

The Administrator has authority and a duty to reconsider the Final Rule. Section 307(d)(7)(B) of the CAA, 42 U.S.C. §7607(d)(7)(B), requires that the Administrator "*shall* convene a proceeding for reconsideration" if: (1) it was either "impracticable" to raise the objection during the comment period, or the grounds for such objection arose after the period for public comment (but within the time specified for judicial review), and (2) the objection is of central relevance to the outcome of the rule— in this case EPA's 2019 decision denying SWRC's request for an SRE for the 2018 RFS compliance year.[14] Where these prerequisites for reconsideration are met, reconsideration is "mandatory." *Clean Air Council v. Pruitt*, 862 F.3d 1, 8 (D.C. Cir. 2017); *see also id.* at 4-5 (Section 307(d)(7)(B) "sets forth the circumstances under which EPA must reconsider a rule").

But even if EPA concludes that the standards of Section 307(d)(7)(B) have not been met, the EPA Administrator has the authority to reconsider a prior action. *See, e.g.*, 74 Fed. Reg. 66,470, 66,471 (Dec. 15, 2009) (granting reconsideration to clarify ambiguous definitions in regulation); 71 Fed. Reg. 14,665, 14,668 (Mar. 23, 2006) (granting petition for reconsideration due to confusion over EPA's methodology). And EPA also must allow for petitions to amend or withdraw agency action under the Administrative Procedure Act, 5 U.S.C. §553(e).

EPA should reconsider *and grant* SWRC's SRE Petition by properly applying the statute in line with the *Sinclair* decision. For the reasons described below, this petition for reconsideration meets the requirements for mandatory consideration. Even if that were not the case, EPA should exercise its discretion to reconsider SWRC's 2018 SRE Petition.

### a.     The grounds for REH's objection arose after the close of any opportunity to raise them with EPA.

Although there was no formal comment period on SWRC's 2018 SRE Petition, any opportunity for SWRC to provide further information or comment on its exemption petition ended on the date EPA issued the Idsal Memo, August 9, 2019. On July 26, 2024, the D.C. Circuit issued its decision in *Sinclair*, vacating EPA's April Denial and making clear that small refinery exemptions are available when compliance with the RFS is *a* cause of a small refinery's disproportionate economic hardship, a determination EPA can make only after it considers "other economic factors" that the petitioning small refinery faced during the compliance year. This petition is being submitted to EPA within 60 days of the D.C. Circuit's decision in *Sinclair*.

Accordingly, this first element of mandatory reconsideration is met.

---

[14] 42 U.S.C. §7607(d)(7)(B).

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

### b. REH's objections are of central relevance to EPA's decision on SWRC's 2018 Exemption Petition.

The objections raised in this petition are of central relevance to EPA's denial of SWRC's SRE Petition. The Idsal Memo denied SWRC's SRE Petition solely based on the DOE Recommendation.[15] However, the D.C. Circuit's opinion outlines the approach that EPA *should have taken* with SWRC's 2018 SRE Petition. The court's opinion underscores the breadth of the economic factors the Agency should have considered in determining whether RFS compliance costs cause SWRC disproportionate economic hardship on top of numerous structural and economic disadvantages and regional compliance hurdles unique to the Rocky Mountain West. And it clarifies that EPA must consider hardship experienced as the result of incomplete pass-through.

This establishes the second element of mandatory consideration. Because SWRC has met both elements for mandatory reconsideration, EPA is required to reconsider its denial of SWRC's 2018 SRE Petition.

### i. The D.C. Circuit's July 2024 *Sinclair* Opinion

Granting the petitions for review of SWRC and two dozen other small refineries, the D.C. Circuit rejected central aspects of EPA's approach to small refinery exemptions as articulated in the April Denial.

The court explained that "[t]he natural meaning of 'hardship' … encompasses more than compliance costs. A hardship is a '[p]rivation; suffering or adversity'"; it is "something that 'makes one's life hard or difficult.'" *Sinclair* at *7. Next, the court entirely rejected EPA's attempt to restrict the meaning of "disproportionate economic hardship." "While EPA may consider a variety of economic factors when deciding what a hardship is, it cannot reduce the board statutory term 'economic hardship' to *only* one factor"—RFS compliance costs. *Sinclair* at *7 (emphasis original). "Costs," like RFS compliance costs, "can certainly impose a hardship, but the economic hardship imposed by a regulatory action can extend beyond costs." *Id.* at *19. Many considerations, from geographic to refinery-specific factors, could result in the same compliance costs affecting refineries differently. SWRC provided EPA with extensive evidence showing why its RFS compliance costs, in concert with the unique set of other economic factors that it faced it 2018, imposed disproportionate economic hardship on the refinery. Under *Sinclair*, EPA is obligated to wholistically consider SWRC's economic position during the 2018 compliance year to determine its entitlement to hardship relief.

The court also found that EPA's "blinkered focus on compliance costs runs afoul of the statutory directive that EPA consider 'other economic factors,' in addition to economic hardship, when deciding

---

[15] SWRC maintains that DOE mis-scored the SRE Petition because EPA did not submit record evidence to DOE demonstrating the number of pipelines connected to the Refinery, but that issue is not the subject of this petition. Rather, EPA's and DOE's failure to consider this record evidence is the subject of a separate action REH recently filed in the D.C. Circuit. SWRC reserves all rights and all arguments regarding EPA's original, wrongful denial of the petition and the DOE Recommendation.

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE**

whether to extend a hardship petition." *Id.* at \*20. (quoting 42 U.S.C. §7545(o)(9)(B)(ii)). EPA cannot simply limit its review of "other economic factors" to "determining whether the small refinery's compliance with its RFS obligations is what caused its alleged" disproportionate economic hardship. *Id.* (citing April Denial at 18).

> The 2011 DOE Study is the component that calls for "determin[ing] whether compliance with the requirements of [the RFS program] would impose a disproportionate economic hardship on small refineries." 42 U.S.C. §7545(o)(9)(A)(ii)(I). In the CAA, Congress instructs EPA to consider "other economic factors" *in addition to* considering economic hardship from RFS compliance. … EPA enjoys no discretion to refuse to consider "other economic factors."

*Sinclair* at \*7-8. The court recognized that Congress provided hardship relief for small refineries because RFS compliance could continuously be more challenging, and perhaps increasingly so, for small refineries because "they lack the inherent scale advantages of large refineries," a point SWRC has made to EPA for many years. *Id.* at \*21, citing *Sinclair Wyo. Refin. Co.*, 887 F.3d at 989.

Next, the D.C. Circuit discarded EPA's overly strict causation requirement. Although "EPA reasoned that hardships unrelated to RFS compliance could not be considered when granting an exemption," the court held that "the statute nowhere suggests that [RFS compliance] must be the sole cause of the hardship." *Id.* at \*8. Instead, the court concluded that the statute makes RIN costs merely a "but-for" cause of disproportionate economic hardship. "For RFS compliance to cause a hardship, the hardship would not have occurred without compliance. But that does not foreclose other factors contributing to the hardship." *Id.*

Finally, the D.C. Circuit conclusively rejected EPA's arguments that small refineries may *never* experience disproportionate economic hardship under the Agency's RIN cost passthrough theory and that any hardship caused by the failure to buy RINs ratably (i.e., contemporaneously with the sale of obligated fuel) is a "business choice" that cannot support an exemption. *Sinclair* at \*9-10.

## ii. If EPA had followed the statute in deciding SWRC's SRE Petition, it would have granted SWRC an exemption for 2018.

When viewed against the exemption standard the D.C. Circuit articulated in *Sinclair*, SWRC warrants relief from its 2018 RFS obligations for reason of "disproportionate economic hardship." SWRC's 2018 Petition and supporting and supplemental materials provide extensive economic information to demonstrate that it continued to face disproportionate economic hardship under the RFS program. The company showed that, without a continuation of its exemption, ███████████████ ████████████████████████████████████. Petition at 4, 6-7. These substantial compliance costs are due to multiple lasting, structural factors that are unique to Wyoming and

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

PADD 416 that caused SWRC to rely more on purchasing RINs for compliance than many other refineries. Because EPA made its decision to deny SWRC's exemption petition solely based on the DOE Recommendation, EPA did not at all consider—or inadequately considered—this information.

Additionally, EPA did not consider how the hardship caused by SWRC's heavy reliance on RIN purchases is exacerbated by SWRC's inability to completely recover its RIN costs via passthrough.

> 1. **Chronic regional and structural disadvantages cause SWRC to experience disproportionate economic hardship from RFS compliance.**

SWRC's Petition explained that it faces disproportionate economic hardship because of chronic regional and structural disadvantages, which Congress has recognized "amplif[y] RFS compliance and competitive disparities" for small refineries in PADD 4.[17] *Sinclair* requires EPA to grant reconsideration and provide SWRC an exemption in light of these issues.

█████████████████████████████████████████████, Petition at 11, ████████
█████████████████████████████████████████████ There are several reasons for this: high demand for diesel in the Rocky Mountain West coupled with the well-established diesel RIN disparity; inhibited biofuel consumer acceptance and blending opportunities in the region; higher RIN costs for complying with the biodiesel and advanced biofuel obligations; low demand for jet fuel in PADD 4; and an inability to export fuel from the Rocky Mountain West. While SWRC and refineries in other parts of the country faced the same regulation, these factors mean that that RFS program has a vastly different influence on SWRC due to these regional differences.

**1.** ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████ Petition at 14. Federal Highway Administration statistics[18] show that Wyoming is the only state in the United States where diesel ("special fuels") consumption exceeded gasoline consumption.[19] Specifically, diesel demand in the state was more than twice the U.S. average, and demand is also significantly higher across PADD 4 generally. As data from the Energy Information

---

[16] "PADD" refers to the five Petroleum Administration for Defense Districts, which "enable regional analysis of petroleum product supply and movements. PADD 4 covers the Rocky Mountain region (Montana, Idaho, Wyoming, Utah, and Colorado). *See* https://www.eia.gov/todayinenergy/detail.php?id=4890.

[17] *See* Explanatory Statement, Consolidated Appropriations Act of 2016, 161 Cong. Rec. H10105 (daily ed. Dec. 17, 2015) ("The conference report accompanying the Energy and Water Development and Related Agencies Appropriations Act, 2010…cited the lack of small refinery input into the earlier study, concerns about *regional* RFS compliance cost disparities, small refinery dependence on the purchase of renewable fuel credits (RINs), and increasing RIN costs. Since then, the dramatic rise in RIN prices has amplified RFS compliance and competitive disparities, *especially where unique regional factors exist, including high diesel demand, no export access, and limited biodiesel infrastructure and production.*")

[18] SWRC's Petition used FHWA's 2016 data as it was then the most recent data, but 2017 and 2018 data are consistent.

[19] Federal Highway Administration, Highway Statistics 2016, "*Highway use of motor fuel,*" Table MF-27 (attached as Exhibit 2). The ratio of diesel to gasoline consumption in Wyoming is even larger than suggested in this table because the FHWA statistics include ethanol in the gasoline statistics.

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE**

Administration (discussed in the Petition) show, U.S. refineries averaged distillate (diesel fuel) production ███████ than SWRC. PADD 4 refineries produced ██████ diesel (on average) than SWRC. Petition at 18. As a result, diesel as a percentage of total production ████████████████ ██████████████████████████████████ Petition at 7, 14-15.20

The DOE Study and scoring matrix recognize that refineries with a high percentage of diesel production "inherently have a more difficult compliance pathway, as the percentage of renewable fuel available to blend into diesel is much lower than the 10 percent of ethanol that can be blended into gasoline." DOE Study at 34. SWRC's Petition explains this in more detail. The Rocky Mountain region's high demand for diesel is a structural barrier to RFS compliance because diesel is inherently "RIN deficient." For every 100 gallons of diesel a refinery produces, it must purchase more RINs than it does for producing 100 gallons of gasoline. Diesel disparity occurs because the only renewable fuels that can be blended into diesel are biodiesel and advanced biofuels (such as renewable diesel). But these fuels are blended into diesel at a much lower percentage than ethanol is blended into gasoline, which means that "typical biodiesel blending yields only about one-third of the RINs required and diesel fuel refiners who are obligated parties under the RFS Program must make up for the shortfall by purchasing...RINs," according to congressional testimony by a senior DOE official. Petition at 16 (quoting Statement of Adam Sieminski at 10, H. Subcomm. on Energy & Power (June 26, 2013)). Consequently, to adequately meet demand for diesel fuel in PADD 4 and adjoining states, SWRC diesel production requires a disproportionate number of RINs to be purchased to meet RFS requirements. *See* Petition at 14-16, 19, 21, 24-25.

But the RIN-deficiency of diesel is not the only structural compliance disadvantage associated with high diesel production, necessitated by high diesel demand. EPA must grant reconsideration to assess the disproportionate economic hardship SWRC faces from the following factors that the DOE Recommendation does not address:

> (a) Diesel's RIN deficiency is further compounded because the type of RINs needed for diesel (biodiesel and advanced biofuels) cost about 65% more in 2018 than the RINs required for compliance with ethanol blending obligations. Petition at 25 (noting that EPA's RIN Worksheets shows that D4 and D5 biodiesel RINs SWRC acquired averaged 20-22 cents/RIN (about 65%) higher in cost than D6 ethanol RINs). And, since more than one-fifth of the Refinery's 2018 RFS renewable volume obligation ("RVO") is D4 and D5 biodiesel, being RIN deficient in this area requires RIN expenditures 65% more costly than if the refinery were deficient in D6 ethanol RINs. Petition at 25. As SWRC's petition showed, the company would need to purchase ███ of its overall RIN obligation for 2018, █████████████████ ████████ Petition at 11.

---

20 U.S. refineries averaged gasoline production at a rate ███ higher than that of SWRC. Directionally, refineries with a higher gasoline yield will have an easier time complying with the RFS due to the widespread use of E10 gasoline/ethanol blend which is near the 10.67% RFS blending requirement in 2018. Petition at 18.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

(b) On top of the fact that diesel is blended with biofuels at a much lower rate, SWRC also faced disproportionate economic hardship because even blending up to B2 was inhibited in Wyoming and the rest of PADD 4 because there was inadequate biofuel production, blending infrastructure, and a lack of consumer acceptance of biofuels in the region. ███████████████ ███████████. Petition at 16-17, 21, 27. There is no local, reliable supply of these fuels. Petition at 22-23 (detailing how only 2.5% of U.S. ethanol plants (5 of 200) and 1.7% of U.S. biodiesel plants (1 of 98) are located in PADD 4). ██████████████████████████████████████████████████████████ ██████████████████████████████████████. Petition at 22-23 ███████████████████████████████████████████████████████████████

(c) In addition, SWRC had limited opportunities to offer biodiesel to its customers. Much of SWRC's diesel fuel was sold into common carrier pipelines and terminals where the ownership, control, and investment decisions were determined by outside entities and no refined products pipeline in the area allowed the pipeline shipment of biodiesel or biodiesel blends.[21] ████████████████████████████████████████████ Petition at 17, 26. ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████[22].

**2.** Separate from SWRC's high diesel production, SWRC's physical location in the Rocky Mountain West created in two additional RFS compliance hurdles. The relatively low demand in the Rocky Mountain region for jet fuel and the Refinery's inability to export its finished products disadvantaged the Refinery because neither exported transportation fuel nor jet fuel requires biofuel blending. *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 649 (D.C. Cir. 2019), *cert. denied sub nom. Valero Energy Corp. v. EPA*, 140 S. Ct. 2792 (2020); Petition at 18-21. This means "there are some options for a refiner to mitigate their purchased RIN cost through product exports and maximizing jet fuel production." Baker & O'Brien, Inc., *Operating Refineries in a High Cost Environment—Options for RFS Compliance* at 22 (Mar. 20, 2017) (emphasis added).[23]

---

[21] In April 2017, Sinclair Oil completed the updates needed to blend biodiesel at the Sinclair Casper Refinery. However, the direction of refined product pipeline movements does not enable SWRC to ship diesel to this terminal.

[22] SWRC's diesel fuel only generates *one-tenth* of the RINs needed for 10.67% RFS compliance, which applies to 37% of the barrel. In contrast, the average PADD 3 refinery would generate more biodiesel RINs (as a result of more extensive blending infrastructure, better consumer acceptance, and warmer weather, for example). Most important, the PADD 3 refinery only has diesel exposure for 14% of the barrel—and therefore, a much lower diesel RIN disparity. Petition at 24-25.

[23] *Available at* https://dz1qxh25lzvvm.cloudfront.net/documents/BakerObrien_com_-_March_2017_AFM_Presentation.pdf.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

While producing jet fuel and exporting gasoline and diesel to mitigate RFS cost is an attractive alternative to reduce RFS regulatory exposure for many refineries, as SWRC's Petition explains, neither opportunity was available to SWRC. Energy Information Administration data[24] incorporated into the petition show that jet fuel yield as a percent of Finished Petroleum Products in 2018 was 9.8% for U.S. refineries and 9.2% PADD 4 refineries. In sharp contrast, SWRC's jet fuel yield in 2018 was only ▮▮▮ of total finished product output.[25] In short, SWRC was not able to shift a significant volume of distillate production to jet fuel to mitigate RFS cost.

 Again relying on EIA data, the Petition also shows that in 2017, each region in the country—except PADD 4—exported significant volumes of finished petroleum products (especially PADD 3 refineries where 53% of U.S. refining capacity is located). Petition at 20 (citing EIA, *Petroleum & Other Liquids—Refinery Utilization and Capacity*.[26] In PADD 3, refineries were able to reduce their RFS obligations/regulatory exposure in 2017 by about one-third by exporting gasoline and diesel. The U.S. refining industry as a whole reduced its RFS obligations by exporting one-fifth of the refined products from the crude oil they refined. However, in PADD 4 there is no pipeline access or other feasible measure through which SWRC could have exported diesel or gasoline. Petition at 20-21. Foreign exports of finished petroleum products are nearly non-existent in PADD 4, and therefore not an option to reduce the hardship caused by RIN purchases.

In practical terms, SWRC faced disproportionate economic hardship in 2018 ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ compared with only 45% of the fuel produced by its competitors in the Gulf Coast region, where refineries can take advantage of the ability to export finished products. Petition at 23-24. And, taken together, SWRC's higher RFS compliance exposure, diesel's RIN deficiency, and the higher costs of purchasing D4 and D5 RINs meant that SWRC faces ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ something that clearly demonstrates disproportionate economic hardship. Petition at 25.

Although DOE's scoring matrix includes metrics to assess "local market acceptance of renewables" including biodiesel and "renewable fuel blending (% of production)," DOE does not score these metrics.[27] This is despite the small refining community repeatedly requesting this from DOE and pointing DOE to available data that would allow it to fairly score these metrics. Further, DOE has refused to score these metrics despite *a federal appeals court opinion* noting that the failure to score these metrics is arbitrary and "*treats unfairly those facilities where diesel makes up a substantial percentage of their transportation fuel production.*" *Ergon-West Virginia, Inc. v. EPA*, 896 F.3d 600, 611 (4th Cir. 2018).

---

[24] When SWRC submitted its hardship petition, it relied on the most recent EIA data available (for 2017 or for 2018 through August or September of that year). But more recent data on all the issues raised in SWRC's Petition shows that this situation did not change throughout 2018.

[25] The petition here mistakenly says "in 2016," but the EIA data referred to in the petition was for January-August 2018.

[26] *See* EIA, *Petroleum & Other Liquids—Refinery Utilization and Capacity*, https://www.eia.gov/dnav/pet/pet_pnp_unc_dcu_nus_m.htm; EIA, *Petroleum & Other Liquids—Exports*, https://www.eia.gov/dnav/pet/pet_move_exp_dc_NUS-Z00_mbblpd_a.htm.

[27] DOE Study at 33 tbl. 10 (showing unscored items 1(c)(iii) and 2(b)(ii) and (iii)).

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE**

Under *Sinclair*, these chronic, structural disadvantages are "other economic factors" EPA must consider in addition to the cost of RFS compliance and the DOE study. *See Sinclair*, at *7-*8. Because EPA relied only on the DOE Recommendation in denying SWRC's petition, EPA must reconsider SWRC's exemption petition and account for these issues.

## 2. SWRC's inability to pass through 100% of its RIN costs compounds this disproportionate economic hardship.

EPA must also reconsider its 2019 denial of SWRC's exemption petition so that it can account for the fact that SWRC did not pass through all its RIN costs. Although the DOE scoring matrix contains a metric that considers whether RINs are a "net revenue or cost," DOE did not score this item, and nothing in the Idsal Memo addresses SWRC's RIN costs. EPA must grant reconsideration to address this, and it must grant SWRC's hardship petition for the following reasons.

The CRA Report SWRC submitted to EPA in 2021 explains in detail—using actual data from over 325,000 unique transactions and crude oil, renewable fuel, and operational cost data from SWRC and its sister refinery (Sinclair Casper Refining Company ("SCRC"))—that SWRC was not able to pass through all its RIN costs to its customers. SWRC's supplement and the CRA Report explain CRA's methodology in full detail.

"If a refinery is unable to pass through the entire cost of its RINs when it makes its fuel sales, the refinery may suffer economic losses that could cause hardship." *Sinclair* at *13.

As part of the April Denial, EPA responded to the CRA Report and rejected CRA's findings. CRA rebutted each of EPA's criticisms in a further report CRA submitted to EPA on May 24, 2022. But (given that it rejected the April Denial on broad grounds) the D.C. Circuit had no reason to consider the reasonableness of EPA's refusal to accept CRA's pass-through findings.

Although EPA's refusal was unreasonable and wrong, it is beside the point for two reasons. First, EPA's own RIN price analysis confirms that its pass-through theory is empirically false.[29] EPA concluded that small refineries pay up to 7.5% more for RINs compared with the daily average price.

---

[28] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[29] EPA, An Analysis of the Price of Renewable Identification Numbers (RINs) and Small Refineries (Dec. 2022), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1016CAA.pdf ("EPA RIN Price Analysis").

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE**

EPA RIN Price Analysis at 1. They also pay more than large refineries for biomass-based diesel RINs. *Id.* In addition to paying more for RINs, small refineries must sell their RINs for less. *Id.* at 7.[30]

SWRC sells a substantial volume of fuel on the weekends, a practice the D.C. Circuit recognized makes it inherently difficult to ensure complete pass-through and flies in the face of a "core tenet[] of the RIN cost passthrough theory…that small refineries will never be economically burdened by the RFS program because they can use the proceeds from their fuel sales to purchase RINs." Sinclair at *12-13.

As this information shows, SWRC faces disproportionate economic hardship from RFS compliance.

### c. Even if mandatory reconsideration is not warranted, EPA should exercise its discretion to reconsider the denial of SWRC's SRE Petition.

EPA should agree that reconsideration here is mandatory. But if not, it should exercise its discretion to reconsider SWRC's petition anyway. This would be an equitable result that SWRC has been seeking for more than five years, ever since EPA wrongly denied its exemption based on faulty DOE scoring.

Although SWRC does not seek reconsideration of the Idsal Memo on these grounds, the long, unfair history of SWRC's petition is worth noting.[31] Once SWRC realized EPA's error, EPA declined to correct it for almost two years for what it admitted were political reasons. EPA officials acknowledged the error, but rather than moving quickly to correct it, EPA declined to take any action on it for another 524 days. EPA officials informed SWRC that their hands were tied because of White House concerns that granting another small refinery exemption might cause political problems in key farm states during a presidential election year. In early 2021, EPA finally corrected the error but refused to defend its decision when it was challenged in court. ███████████ fighting a motion filed by biofuels interests seeking a judicial stay of this decision, and even when SWRC defeated the stay motion, EPA refused to return SWRC's RINs. After it obtained a remand of that 2021 decision, EPA then determined that no small refineries are entitled to exemptions for 2018 but allowed 31 other small refineries to keep their 2018 compliance RINs that EPA had already returned to them. Still EPA refused to refund SWRC's RINs.

### III. EPA Must Provide SWRC with Replacement RINs When it Grants SWRC's Petition.

Previously, when EPA wrongly denied SWRC's 2014 exemption petition, the Agency provided SWRC with an equal number of current vintage RINs to replace the RINs that had expired while SWRC successfully challenged EPA's denial. EPA should do likewise here. Not only did EPA miss its

---

[30] The D.C. Circuit also did not reach small refineries' arguments about this analysis in *Sinclair* because it had no need to.
[31] And, to the extent EPA is worried about line-drawing in granting SWRC's reconsideration petition and providing it with a 2018 exemption, this history is also a reasonable basis for differentiating SWRC's petition. SWRC is the only small refinery of the five originally denied under the Idsal Memo that can claim that EPA's 2019 denial stems from a mistake the agency made, and it is the only small refinery denied under the Idsal Memo that has continuously challenged EPA's unlawful process. None of the others challenged the April Denial—SWRC (along with SCRC) were the lead petitioners.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE

statutorily imposed 90-day deadline to act on SWRC's petition by 140 days, that deadline passed five-and-a-half years ago. In total, SWRC ████████████████████████████████ for 2018 compliance that expired long ago. Replacement RINs are the only way to make SWRC whole. And EPA's authority to provide such "replacement RINs" has been affirmed in a similar case where a small refinery's RINs depreciated in value in between the time the refinery retired them and the time EPA granted its exemption petition (long after its statutory deadline). Kern Oil, 2022 WL 3369528, at *3. ("EPA has the authority under the RFS statute to remedy [a small refinery's] injury via a tailored RIN replacement order, authority that the agency has exercised before when its own legal errors have deprived SRE recipients of a benefit that they otherwise would have received under the EPA's default remedy" of merely returning unexpired RINs.) (citing Producers of Renewables United for Integrity Truth & Transparency v. EPA, No. 19-9532, 2022 WL 538185, at *2–3 (10th Cir. Feb. 23, 2022); 42 U.S.C. § 7545(o)(5), (9)(B)).

## IV.     Conclusion

As demonstrated in this petition, the criteria for mandatory reconsideration are met and EPA must reconsider SWRC's 2018 Petition in light of the D.C. Circuit's ruling.


Respectfully submitted,

Adam G. Suess
Vice President & Counsel
Government & External Relations & Counsel
REH Company, LLC (formerly The Sinclair Companies)
550 East South Temple
Salt Lake City, Utah 84102
813-520-9708
adam.suess@REHcompany.com


cc:     Michael Regan, EPA Administrator (by email)
        Byron Bunker, EPA OTAQ Compliance Division (by email)
        Jeffrey Holmstead, Bracewell LLP (by email)
        Brittany Pemberton, Bracewell LLP (by email)

CONTAINS CONFIDENTIAL BUSINESS INFORMATION – EXEMPT FROM FOIA DISCLOSURE